UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GAMMON AND ASSOCIATES INC., *Plaintiff*, vs. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, and CNA FINANCIAL CORPORATION d/b/a CNA, *Defendants*. | COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, Gammon and Associates Inc. ("Plaintiff" or "Gammon and Associates") brings this Complaint, alleging relief against Defendants National Fire Insurance Company of Hartford ("National") and CNA Financial Corporation ("CNA") and avers as follows:

### I.    NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendants.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down on March 19, 2020 at its California office and March 20, 2020 at its New York office., Plaintiff's business has suffered business loss, Plaintiff's business has suffered

3. Plaintiff's insurance policy provide coverage for all non-excluded business losses, and thus provide coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $200,000.00 (or $100,000 a month gross income).

1

## II. JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendants. Further, Plaintiff has suffered business losses in an amount greater than $200,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* at § 1332(a).

6. This Court has personal jurisdiction over Defendants, National and CNA. At all relevant times Defendants have engaged in substantial business activities in the State of New York. At all relevant times Defendants transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York. Defendants purposefully availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff in New York which is the subject of this case.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendants are corporations that have substantial, systematic, and continuous contacts in New York and within the Southern District of New York. Further, the insurance sold to Plaintiff which is the subject of this case was sold in the Southern District of New York.

## III. PARTIES

8. At all relevant times, Plaintiff, Gammon and Associates is authorized to do business in the State of New York. Gammon and Associates owns, operates, manages, and/or controls a marketing and advertising agency with two office locations. The offices are located at 152 Madison Ave., Suite 400, New York, NY 10016-5424 and 2829 N. Glenoaks Blvd., Ste 204, Burbank, CA 91504.

9. Defendant, CNA is an insurance carrier who provides business interruption

insurance to Plaintiff.  CNA is headquartered at 151 N Franklin St, Floor 9, Chicago, IL 60606.

10. Upon information and belief, Defendant National is wholly owned by CNA. National underwrote the insurance provided to Plaintiff and is headquartered at 151 N Franklin St, Chicago, IL 60606.

11. At all relevant times, Defendants issued a policy to Gammon and Associates to cover business interruption loss from November 10, 2019 until November 10, 2020.  The policy number is B6021300920.  This policy was intended to cover losses to business interruption.  *See* Declaration attached hereto as Exhibit A.

12. The policy is currently in full affect in providing, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

13. Plaintiff discussed with Defendants the possibility of filing a claim for business loss and business interruption and other claims and Defendants told Plaintiff that the claim would be rejected.

## IV. FACTUAL BACKGROUND

### A. Insurance Coverage

14. Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

15. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Properties is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Insured Properties. This additional coverage is identified as coverage under "Civil Authority."

16. The Policy is an all-risk policy, insofar as it provides that covered causes of loss

under the policy means coverage for all covered losses, including but not limited to direct physical loss or direct physical damage, unless the loss is specifically excluded or limited in the Policy.

17. The Policy also covers for damages resulting from business interruption when there is property damage.

18. Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

**B.     The Coronavirus Pandemic**

19. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces of the business.

20. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

21. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

22. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

23. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.     Civil Authority**

24.     On March 7, 2020 Governor Cuomo declared a State of disaster Emergency for the entire state of New York as a result of COVID-19. *See* Executive Order 202, attached herein as Exhibit B.

25.     On March 12, 2020, Governor Cuomo set restrictions on large gatherings. *See* Executive Order 202.1, attached herein as Exhibit C.

26.     On March 20, 2020, the State of New York issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. Specifically, it restricted all non-essential businesses to reduce the in-person workforce at any location by 100%. *See* Executive Order 202.8, attached herein as Exhibit D. This Order has been extended to at least May 28, 2020. *See* Executive Order 202.31, attached herein as Exhibit E.

27.     Similarly, Governor of California, Gavin Newsom, ordered a State of Emergency and a stay at home order on March 19, 2020. *See* Executive Order N-33-20, attached herein as Exhibit F.

28.     On May 7, 2020, Governor Newsom loosened restrictions, but only to curbside retail, childcare, manufacturing and logistics. *See* Order of the State of Public Health, attached herein as Exhibit G, and https://covid19.ca.gov/roadmap/ (last visited May 16, 2020).

29.     Plaintiff's business is unable to operate due to the stay-at-home orders for public safety issued by the Governors of New York and California and the States of New York and California generally, and wanted to submit a claim to its insurance carrier related to such losses, but was told such claim(s) would be rejected.

30.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff.

REPORTER: Mr. President may I ask you about credit and debt as

>well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
>PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

  31.  The President is articulating a few core points:

    a.  Business interruption is a common type of insurance.

    b.  Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c.  This pandemic should be covered unless there is a specific exclusion for pandemics.

    d.  If insurers deny coverage, they would be acting in bad faith.

  32.  These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that

COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**D.     Impact on Plaintiff**

33.     As a result of the Orders referenced herein, Plaintiff shut its doors to its business.

34.     Plaintiff's business loss occurred when the State of New York declared a State of Emergency on March 7, 2020.  It suffered further when the State of New York required all non-essential businesses to shut down on March 20, 2020.  It suffered similar loss to its California office when California declared a State of Emergency and stay at home order to all non-essential businesses on March 19, 2020, which is still in effect at present.

35.     Prior to March 7, 2020, Plaintiff offices were opened for business. Plaintiff's business is not a closed environment, and because people – staff, clients, building personnel, and others – constantly cycle in and out of the offices/suites, there is an ever-present risk that the Insured Properties are contaminated and would continue to be contaminated.

36.     Businesses like the Plaintiff's are susceptible to being or becoming contaminated, as both respiratory droplets and fomites are likely to be retained on the Insured Properties and remain viable for far longer.

37.     The virus is physically impacting Plaintiff. Any effort by the Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

38.     A declaratory judgment determining that the coverage provided under the Policy exists and is necessary so as to prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a

substantial loss of business income and additional expenses covered under the Policy.

### V.   CAUSE OF ACTION
### DECLARATORY RELIEF

39. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

40. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

41. An actual controversy has arisen between Plaintiff and Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendants disputes and denies that:

   a. The Orders constitute a prohibition of access to Plaintiff's Insured Properties;

   b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here.

   d. The Orders trigger coverage;

   e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in New York and/or California due to physical loss\or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

   f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

   g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

42. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Properties as Civil Authority as defined in the Policy.

43. Plaintiff further seeks a Declaratory Judgement to affirm that the Order triggers coverage.

44. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of New York due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Properties.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

1) For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

2) For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

3) For a declaration that the Orders trigger coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in New York and California due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Properties or the immediate area of the Plaintiff's Insured Properties.

6) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: May 19, 2020 　　　　　　　　　　　　*/s/ Michael Weinkowitz*

　　　　　　　　　　　　　　　　　　　　　Arnold Levin, Esq.
　　　　　　　　　　　　　　　　　　　　　Laurence Berman, Esq.
　　　　　　　　　　　　　　　　　　　　　Frederick Longer, Esq.
　　　　　　　　　　　　　　　　　　　　　Daniel Levin, Esq.
　　　　　　　　　　　　　　　　　　　　　Michael Weinkowitz, Esq.
　　　　　　　　　　　　　　　　　　　　　Nicola Serianni, Esq.
　　　　　　　　　　　　　　　　　　　　　**LEVIN SEDRAN & BERMAN LLP**
　　　　　　　　　　　　　　　　　　　　　510 Walnut Street, Suite 500
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19106-3697
　　　　　　　　　　　　　　　　　　　　　Telephone: (215) 592-1500
　　　　　　　　　　　　　　　　　　　　　Facsimile: (215) 592-4663
　　　　　　　　　　　　　　　　　　　　　alevin@lfsblaw.com
　　　　　　　　　　　　　　　　　　　　　flonger@lfsblaw.com
　　　　　　　　　　　　　　　　　　　　　dlevin@lfsblaw.com

　　　　　　　　　　　　　　　　　　　　　Richard M. Golomb, Esq.
　　　　　　　　　　　　　　　　　　　　　Kenneth J. Grunfeld, Esq.
　　　　　　　　　　　　　　　　　　　　　**GOLOMB & HONIK, P.C.**
　　　　　　　　　　　　　　　　　　　　　1835 Market Street, Suite 2900
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　　Telephone: (215) 985-9177
　　　　　　　　　　　　　　　　　　　　　Facsimile: (215) 985-4169
　　　　　　　　　　　　　　　　　　　　　rgolomb@golombhonik.com
　　　　　　　　　　　　　　　　　　　　　kgrunfeld@golombhonik.com

　　　　　　　　　　　　　　　　　　　　　W. Daniel "Dee" Miles, III
　　　　　　　　　　　　　　　　　　　　　Rachel N. Boyd
　　　　　　　　　　　　　　　　　　　　　Paul W. Evans
　　　　　　　　　　　　　　　　　　　　　**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
　　　　　　　　　　　　　　　　　　　　　P.O. Box 4160
　　　　　　　　　　　　　　　　　　　　　Montgomery, AL 36103
　　　　　　　　　　　　　　　　　　　　　Telephone: (334) 269-2343
　　　　　　　　　　　　　　　　　　　　　Facsimile: (334) 954-7555

　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*