UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

GAMMON AND ASSOCIATES INC.,

                    Plaintiff,

    -against-

NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD,

                    Defendant.

------------------------------------- x

MEMORANDUM DECISION
AND ORDER

20 Civ. 3882 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Gammon and Associates Inc. brings this action against National Fire Insurance Company of Hartford ("NFIC"), seeking declaratory relief pursuant to 28 U.S.C. § 2201(a), alleging that the losses it sustained because of the COVID-19 pandemic are covered under the Business Income, Extra Expense and Civil Authority policy provisions. (*See* First Am. Compl. ("Complaint"), ECF No. 1.) Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to plausibly plead that it is entitled to coverage under those provisions. (*See* Notice of Mot., ECF No. 40.) Defendant's motion to dismiss is GRANTED.

## I.    FACTUAL BACKGROUND

    Plaintiff operates a marketing and advertising agency with two office locations: New York, New York and Burbank, California. (Compl. ¶ 8.) NFIC, an Illinois insurance company, issued CNA Connect Policy No. 6021300920 to Plaintiff for the period of November 10, 2019 to November 10, 2020 (the "Policy"). (*Id.* ¶ 14; Exhibit A, ECF No. 27-1.) As relevant here, the Policy provides property coverage that is set forth in the Businessowners Special Property

Coverage Form (Form SB-146801-I) with its declarations, endorsements, and exclusions. (Exhibit A, at 14–152.) The Business Income and Extra Expense coverage provides in relevant part:

> b. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." *The "suspension" must be caused by direct physical loss of or damage to property at the described premises.* The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> * * * *
>
> a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> b. We will pay Extra Expense (other than the expense to repair or replace property) to:
>
>   (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
>
>   (2) Minimize the "suspension" of business if you cannot continue "operations."

(*Id.* at 36 (emphasis added).) The Policy defines "Covered Causes of Loss" as "risks of direct physical loss" subject to various exclusions or limitations. (*Id.* at 15.) Suspension is defined in the Policy as "[t]he partial or complete cessation of [] business activities; or [t]hat a part or all of the described premises is rendered untenantable." (*Id.* at 33.) The Policy also provides that the:

> "Period of restoration" means the period of time that:
>
> b. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> c. Ends on the earlier of:

> (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>
> (2) The date when business is resumed at a new permanent location.

The Civil Authority coverage provides:

> 1. When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. *The civil authority action must be due to direct physical loss of or damage to property at locations*, other than described premises, caused by or resulting from a Covered Cause of Loss.

(*Id.* at 60 (emphasis added).)

In March 2020, New York Governor Andrew M. Cuomo and California Governor Gavin Newsom declared a state of emergency in their respective states in response to the COVID-19 pandemic. (Exhibit B, ECF No. 27-2, at 2; Exhibit F, ECF No. 27-6, at 2.) Thereafter, Governor Cuomo, on March 12, 2020, issued an executive order noting the continuing rise in documented COVID-19 cases and restricting large gatherings "to cope with the disaster." (Exhibit C, ECF No. 27-3, at 5.) Then, on March 20, 2020, again noting the continued rise in COVID-19 cases, he required all businesses to "utilize . . . any telecommuting or work from home procedures [and] reduce the in-person workforce at any work locations by 100%." (Exhibit D, ECF No. 27-4, at 3; Exhibit E, ECF No. 27-5, at 2.) Similarly in California, Governor Gavin Newsom issued an order on March 19, 2020, "[t]o protect public health," and directing "all [Californians] to stay at home or at their place of residence." (Exhibit F ("March 19 Order"), ECF No. 27-6, at 2–3.) While Governor Newsom later lifted those restrictions, Los Angeles Mayor Eric Garcetti, on June 20,

3

2020, directed "all businesses within the City of Los Angeles [] to cease operations that require in-person attendance by workers at a workplace."[1] (Exhibit I, ECF No. 27-9, at 3.)[2]

Plaintiff alleges that "as a result of COVID-19" and the Orders, it "completely ceased operations and closed its [offices] on March 17, 2020." (Compl. ¶¶ 2, 89–90.) Notably, Plaintiff does not allege that COVID-19 was present in its offices or among its employees. Plaintiff asserts that, as a result of closing its offices, it incurred a "substantial loss of business income and additional expenses." (*Id.* ¶¶ 29, 33, 38.) Plaintiff contacted an insurance agent regarding its intent to file an insurance claim but was informed that its "business interruption claim would be denied." (*Id.* ¶¶ 55–56.)

Thereafter, Plaintiff filed suit seeking declaratory relief affirming that its losses are covered under the Policy. (Compl. ¶¶ 103–109.) Defendant filed the present motion to dismiss pursuant to Rule 12(b)(6).

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6) Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Ail. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

---

[1] The New York and California orders are hereinafter referred to collectively as the "Orders."

[2] While there were exceptions to the Orders, none are relevant here.

4

The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[3]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

## B. New York Insurance Law.

Under New York law,[4] a court must "attempt to ascertain the parties' intent from the language of the insurance contract itself ... constru[ing] the policy as a whole; all pertinent provisions of the policy should be given meaning, with due regard to the subject matter that is being insured and the purpose of the entire contract." *Westchester Fire Ins. Co. v. Schorsch*, 186 A.D.3d 132, 129 N.Y.S.3d 67, 74 (1st Dep't 2020) (internal citation omitted). Courts must take care not to "make or vary the contract of insurance to accomplish its notions of abstract justice or

---

[3] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

[4] The Policy does not explicitly state which law governs its interpretation and enforcement. Nevertheless, the parties agree and their "briefs assume that New York substantive law governs the issues of contract interpretation" and "such implied consent is, of course, sufficient to establish the applicable choice of law." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001) (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000)). Nevertheless, as demonstrated below, the result would be the same under California law.

5

moral obligation." *Keyspan Gas East Corp. v. Munich Reinsurance Am., Inc.*, 31 N.Y.3d 51, 73 N.Y.S.3d 113, 96 N.E.3d 209, 216 (2018). "[A]n unambiguous policy provision must be accorded its plain and ordinary meaning, and the court may not disregard the plain meaning of the policy's language in order to find an ambiguity where none exists." *Chiarello ex rel. Chiarello v. Rio*, 152 A.D.3d 740, 59 N.Y.S.3d 129, 131 (2d Dep't 2017) (alteration in original).

"[T]he issue of whether a provision is ambiguous is a question of law," and "focuses on the reasonable expectations of the average insured upon reading the policy." *Hansard v. Fed. Ins. Co.*, 147 A.D.3d 734, 46 N.Y.S.3d 163, 166 (2d Dep't 2017) (internal quotation marks and citations omitted); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, No. 20 Civ. 3418 (JGK), 2021 WL 860345, at *2 (S.D.N.Y. Mar. 6, 2021) (citing *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)). "Where contract terms are 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business,' the contract terms are ambiguous." *Food for Thought Caterers*, 2021 WL 860345, at *2 (quoting *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012)). "'[A]ny ambiguity must be resolved in favor of the insured and against the insurer.'" *Id.*, 2021 WL 860345, at *2 (quoting *Parks Real Estate Purchasing Grp.*, 472 F.3d at 42). "Contractual language 'whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.'" *Id.*, 2021 WL 860345, at *2 (citation omitted).

The insured party "bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).

### III. DEFENDANT'S MOTION TO DISMISS IS GRANTED

#### A. Business Income and Extra Expense Coverage.

Plaintiff argues that it is entitled to Business Income and Extra Expense coverage because COVID-19 "intruded upon the properties" and "caused direct physical loss of and/or damage to the covered premises." (Pl.'s Opp'n at 2; Compl. ¶¶ 3, 93.) Plaintiff contends that, as a result, its "properties became unusable in the manner they were accustomed and intended to being used." (Pl.'s Opp'n at 2 (quoting Compl. ¶¶ 3–4).)

Indeed, Plaintiff's only basis for its conclusory assertion that COVID-19 "intrud[ed] upon the properties" is its assumption that because its offices are in high-density office buildings, COVID-19 must be present there.[5] (Oral Argument Tr. dated March 16, 2021, ECF No. 63, 57:2–22.) That speculation is simply insufficient to state a claim. *Ashcroft*, 556 U.S. at 678 (The factual allegations pled must "be enough to raise a right to relief above the speculative level.") (citing *Twombly*, 550 U.S. at 555); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, — F.Supp.3d —, 2021 WL 860345, at *5 (S.D.N.Y. Mar 6, 2021) ("speculative allegations without factual support cannot serve as a basis for a claim").[6] Consequently, Plaintiff is not entitled to

---

[5] Thus, cases cited by Plaintiff where noxious gas, disease-causing particles, fumes, and the like, were present in property are inapposite. *See, e.g., Schlamm Stone & Dolan, LLP. v. Seneca Ins.*, No. 603009/2002, 2005 WL 600021 (N.Y. Sup. Ct. Mar. 4, 2005) (noxious particles in the insured property); *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir.2009) (unpleasant odor in property); *Motorist Mut. Ins. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005) (e-coli contamination rendered property uninhabitable); *Pepsico, Inc. v. Winterthur Int'l Am. Ins.*, 24 A.D.3d 743, 806 N.Y.S.2d 709 (2d Dep't 2005) ("faulty raw ingredients" in beverage products).

[6] Notably, and contrary to Plaintiff's Complaint and brief, Plaintiff conceded at oral argument that the nature of its claim is not that COVID-19 infiltrated its offices but that it should be able to sue even if COVID-19 is not found in the office. (*Compare* Pl.'s Opp'n. at 2, 8 (contending the presence of COVID-19 in the Insured Premises caused loss of and damage to property), *and* Compl. ¶¶ 3, 93 (asserting the same), *with* Oral Argument Tr., at 58:11–19 (conceding that nature of claim is not that COVID-19 infiltrated its offices), *and* Compl. ¶ 110 ("Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Properties. . . .").) Plaintiff would still fail to demonstrate its entitlement to declaratory relief because its failure to establish a prerequisite to coverage—"direct physical loss of or damage to property at the" insured premises—is fatal to its claim.

7

declaratory relief on this claim. Accordingly, Plaintiff's loss of use does not establish "direct physical" loss or damage.

Even assuming Plaintiff could adequately allege that COVID-19 was present in its offices and caused Plaintiff's loss of use, Plaintiff would still fail to state a claim for declaratory relief. To trigger the Business Income and Extra Expense coverage, Plaintiff must suffer a "direct physical loss of or damage to property at the described premises." (Compl., Exhibit A, at 36.) Since the Policy does not define that language, the plain meaning governs. *Chiarello*, 59 N.Y.S.3d at 131. New York courts interpreting similar or identical language have consistently held that the plain meaning is "limited to losses involving physical damage to the insured's property" and does not include loss of use. *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 507 F. Supp. 3d 482, 486 (S.D.N.Y. 2020) (collecting cases); *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 20 Civ. 4736 (GHW), 2021 WL 2403088, at *7 (S.D.N.Y. June 11, 2021) ("New York courts have consistently maintained that 'direct physical loss of or damage' language requires physical damage to invoke coverage, and that loss of use due to the pandemic does not constitute physical damage when the covered property was physically unharmed by the virus."); *id.* (collecting cases); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("direct physical loss or damage" unambiguously requires "some form of actual, physical damage to the insured premises); *JD Cinemas, Inc. v. Northfield Ins. Co.*, No. 609919/2020, 2021 WL 2626973, at *7 (N.Y. Sup. Ct. Mar. 05, 2021) ("A provision that covers business income loss as a result of direct physical loss of or damage to property at the premises, does not extend to causes of closure which are not due to damage at the premises; actual physical damages are required."). As the *Newman* court explained, "[t]he words 'direct' and 'physical,' which modify the phrase" loss of or damage to, "ordinarily connote actual, demonstrable harm of some form to

the premises itself." *Newman*, 17 F. Supp. 3d at 331 (citing *Roundabout Theatre Co. v. Continental Cas. Co.*, 302 A.D.2d 1, 7, 751 N.Y.S.2d 4 (1st Dep't 2002); Couch on Insurance, § 148:46 (3rd ed. 2009)); *see also Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d 4 (holding that "direct physical loss and damage to" requires physical damage to the insured's property).

Plaintiff contends, however, that requiring "some form of physical, structural damage . . . would render the phrase 'loss of' meaningless." (Pl.'s Opp'n at 11.) It creates an ambiguity because "loss" and "damage" do not have distinct meanings, and the "lack of clarity", Plaintiff contends, should result in a resolution in its favor.[7] (Pl.'s Opp'n at 10.) Plaintiff makes a similar argument as that consistently rejected by New York courts that have addressed this issue. As those courts have held, neither term is rendered meaningless by the interpretation above.[8] For example, "loss of" can "indicate absolute destruction of insured property" while "damage to" implicates "a lesser, repairable harm." *Food for Thought Caterers Corp.*, 2021 WL 860345, at *4 (citing *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 180 (S.D.N.Y. 2020)).

---

[7] Plaintiff also relies on the definition of "property damage" in the Businessowners Liability coverage to contend that "'physical loss of' is [a] different, basis for coverage beyond 'damage to'," thus, "physical injury is not required for property damage to exist." (*See* Pl.'s Opp'n at 9 (citing Ex. A, at 119).) This contention fails for several reasons. First, "direct" and "physical" clearly modify both "loss" and "damage." *See Newman*, 17 F. Supp. 3d at 331. Second, Plaintiff would have this Court interpret the term "damage" in the phrase "direct physical damage" to mean "direct physical [loss of use of tangible property that is not physically injured]" but, for obvious reasons, that contention must fail. Indeed, it contradicts the plain meaning of the phrase and would render the term "physical" meaningless. Thus, the definition of "property damage" found in the liability coverage, which is distinct from the Businessowners Special Property coverage, does not bring "loss of use" within the meaning of "direct physical damage."

[8] Plaintiff's reliance on *Total Intermodal* does not change this conclusion. (Pl.'s Opp'n at 9 n.8 (citing *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17 Civ. 4908 (AB), 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018).) Indeed, Judge Birotte Jr., who decided *Total Intermodal*, later rejected the very interpretation that Plaintiff argues for here. *Mark's Engine Co. No. 28 Rest. v. Travelers Indem. Co. of Conn.*, 492 F.Supp.3d 1051, 1056 (C.D. Cal. 2020) ("[T]o the extent Plaintiff relies on [] *Total Intermodal* for the proposition that 'direct physical loss of' encompasses deprivation of property without physical change in the condition of the property, the Court notes that such an interpretation of any insurance policy would be without any 'manageable bounds.'").

9

Regardless, what is clear here is that neither "direct physical loss" or "direct physical damage" include "loss of use."[9] Accordingly, Plaintiff's loss of use is not covered by the Policy's Business Income and Extra Expense coverage.[10]

## B. Civil Authority Coverage.

To trigger coverage under the Civil Authority provision, Plaintiff must allege that a "Covered Cause of Loss" led to the "direct physical loss of or damage to property at locations, other than [Plaintiff's] premises," resulting in a "civil authority" that prohibited access to Plaintiff's premises. (Exhibit A, at 60.)

Plaintiff contends that "other property within 1000 feet of the insured properties was [] damaged by [the Orders]." (Pl.'s Opp'n at 19; *id.* (citing Compl. ¶¶ 71–96).) Plaintiff misunderstands the Civil Authority provision. It must allege that the physical damage to surrounding properties *caused* the issuance of the Orders. (Exhibit A, at 60.) Plaintiff fails to do

---

[9] Plaintiff cites to several out-of-state decisions that interpret "direct physical loss of" to include "loss of use." (*See e.g.*, Pl.'s Opp'n at 13; Letter dated January 22, 2021, ECF No. 54; Letter dated March 5, 2021, ECF No. 57; Letter dated March 18, 2021, ECF No. 61.) That interpretation "has been rejected under New York law." *Food for Thought Caterers*, 2021 WL 860345, at *4 n.2. Moreover, Plaintiff incorrectly contends that differing interpretations among judges necessarily renders the policy language here ambiguous. *GEOMC Co. v. Calmare Therapeutics Inc.*, 768 F. App'x 1, 4 (2d Cir. 2019) ("It is sometimes contended that a document is ambiguous whenever different judges interpret it differently. That view is incorrect. . . .") (citing *Hugo Boss Fashions, Inc. v. Federal Insurance Co.*, 252 F.3d 608, 619 n.8 (2d Cir. 2001).)

[10] To the extent Plaintiff claims entitlement to declaratory relief regarding Business Income and Extra Expense coverage for loss of use because of COVID-19's presence at other locations, that claim similarly fails. (Compl. ¶ 89.) As the court held in *Roundabout Theater*, ""[t]he plain meaning of the words 'direct' and 'physical' narrows the scope of coverage and mandates the conclusion that losses resulting from [alleged] off-site property damage do not" give rise to coverage. *Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d 4; *Newman*, 17 F. Supp. 3d at 331 (concluding that "direct" and "physical" unambiguously do not include a "forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.").

10

so.[11] It is not until Plaintiff's opposition that it contends the "Orders were entered due to property damage caused by the coronavirus," citing to Emergency Executive Order No. 101 issued by New York City's Mayor Bill de Blasio, which provides that "the virus physically is causing property loss and damage." (Pl.'s Opp'n at 4.) Yet, this vague statement still does not suffice to plausibly allege that the harm suffered by a surrounding property gave rise to the Orders, which in turn prohibited Plaintiff's access to its properties. In fact, it is clear from the Complaint and the Orders that "Plaintiff was forced to close for the same reason as its neighbors — the risk of harm to individuals on its own premises due to the pandemic" as opposed to harm sustained by surrounding properties. *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 507 F. Supp. 3d 482, 488 (S.D.N.Y. 2020); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 134 (2d Cir. 2006) (finding the interruption of plaintiff's business was not a "direct result" of damage to other properties because "[t]he evidence [] indicates [] that the government's [] decision to halt operations at the Airport indefinitely was based on fears of future attacks.").

Lastly, Plaintiff contends that the Orders prohibited access to its properties because "it was illegal for [Plaintiff] to use its properties for their intended purpose." (Pl.'s Opp'n at 19.) New York courts have consistently rejected such a contention. *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 20 Civ. 4736 (GHW), 2021 WL 2403088, at *8 (S.D.N.Y. June 11, 2021) (denying coverage where the civil authority "did not prohibit access to the premises outright"); *Michael Cetta, Inc.*, 506 F. Supp. 3d at 184 (denying claim for civil authority coverage where

---

[11] Notably, even Plaintiff's assertions that the surrounding properties were damaged are vague and insufficient because they refer to the general impact of the Orders on other businesses. (*See, e.g.*, Compl. ¶¶ 74 (orders "restricted all non-essential businesses to reduce the in-person workforce"), 96 (alleging that the orders closed businesses and "ordered persons to stay at home").) They do not suffice to trigger coverage under the Policy. *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 183 (S.D.N.Y. 2020) ("Without specific allegations that a neighboring property suffered 'damage to property,' the Complaint fails to state a claim that is plausible on its face as to [] entitlement of civil authority coverage.")

plaintiff did not allege that "access was ever denied completely"); *see also Selane Prod., Inc. v. Cont'l Cas. Co.*, No. 22 Civ. 07834 (MCS) (AFM), 2020 WL 7253378, at *5 (C.D. Cal. Nov. 24, 2020) ("complaint does not plausibly allege [] any civil authority orders that prohibited access to Plaintiffs' places of business (as opposed to simply prohibiting Plaintiffs from operating their businesses)") (citation omitted); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp. 3d 937, 945 (S.D. Cal. 2020) (plaintiffs failed to state a claim for civil authority coverage where complaint "only alleges that Plaintiffs were prohibited from operating their businesses at their premises"). Accordingly, Plaintiff's losses are not covered by the Civil Authority coverage.[12]

## IV. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT IS DENIED

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). Yet, "[i]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)). Indeed, leave to amend may be denied if plaintiff "fails to specify [] how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Since the Policy does not provide coverage for the loss Plaintiff suffered, leave to amend would be futile and is denied.[13]

---

[12] Since Plaintiff fails to establish an entitlement to coverage, this Court need not address the parties' arguments regarding the Policy's exclusions.

[13] For the same reason, Plaintiff's request for discovery to "address the many factual issues" in its Complaint, is denied.

## V. CONCLUSION

Defendants' motion to dismiss, (ECF No. 18), is GRANTED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
      August 31, 2021

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge